IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

THE ESTATE OF PAUL HEENAN, by
Personal Representative John Heenan,

                      Plaintiff,                    OPINION AND ORDER

    v.

                                                  13-cv-606-wmc

THE CITY OF MADISON, NOBLE WRAY,
and STEPHEN[1] HEIMSNESS,

                      Defendants.

---

In this § 1983 lawsuit, the Estate of Paul Heenan alleges that the City of Madison, its former Chief of Police, Noble Wray, and one of its former police officers, Stephen Heimsness, violated Heenan's constitutional rights when Heimsness shot and killed Heenan. Before the court is the City of Madison's and Noble Wray's motion to strike all or portions of plaintiff's complaint under Federal Rule of Civil Procedure 12(f) and motion to dismiss claims against Wray in his individual capacity.[2] (Dkt. #5.) Heimsness joins in the other defendants' motion to strike. (Dkt. #11.) For the reasons that follow, the court will grant defendants' motion to strike with respect to the table of contents and subheadings in Section IV, but in all other respects, deny the motion. As for the motion

---

[1] Defendants correct the spelling of defendant Heimsness's first name Stephen (rather than Steven). The correct spelling is reflected in the caption above; and the clerk's office is also directed to change the spelling on the docket sheet.

[2] Defendants also moved to dismiss any claims against Wray in his official capacity as duplicative of the claims against the City, and moved to dismiss a direct claim against the City for indemnification. In its opposition brief, plaintiff clarified that: (1) it was only asserting claims against Wray in his *individual* capacity; and (2) its indemnification claim was not a direct claim against the City, but rather properly included to preserve his right to recover indirectly from the City. (Pl.'s Opp'n (dkt. #10) 18 n.4, 21.) Accordingly, defendants withdrew these aspects of their motion in their reply. (Defs.' Reply (dk. #12) 2 n.2.)

to dismiss, the court will grant defendants' motion to dismiss all claims against defendant Noble Wray because the complaint does not allege that Wray intended for Heenan or someone like him to be harmed.[3]

## BACKGROUND

During the early morning hours of November 9, 2012, defendant Stephen Heimsness shot and killed Paul Heenan. (Compl. (dkt. #1) ¶¶ 4104.) In this lawsuit, the Estate alleges that Heimsness used excessive force in violation of Heenan's rights under the Fourth Amendment of the United States Constitution. (*Id.* at ¶¶ 501-502.) Plaintiff also brings claims against Wray in his individual capacity and against the City of Madison for being deliberately indifferent to Heenan's rights by failing to train and supervise Heimsness adequately. (*Id.* at ¶¶ 503-506.) Finally, plaintiff asserts a claim of indemnification against the City for any judgment entered against Wray or Heimsness pursuant to Wis. Stat. § 895.46. (*Id.* at ¶ 513.)

## OPINION

### I. Motion to Strike

Defendants seek an order striking the entire complaint and requiring plaintiff to file an amended complaint that omits certain objectionable material or, in the alternative, to strike those allegations from the complaint. Defendants acknowledge that motions to strike are generally discouraged in this circuit. *See Smith v. Bray*, 681 F.3d 888, 903 (7th

---

[3] Also before the court is a stipulation to amend the scheduling order (dkt. #18), which the court will grant, as detailed below in the order.

Cir. 2012) ("[M]otions to strike are usually discouraged because of their tendency to multiply the proceedings and prolong briefing."). Any marginal benefit to the party seeking such relief is typically offset by the expense of judicial resources and the delay in adjudicating a case.

Defendants, however, argue that this motion to strike is proper given (1) numerous "immaterial" or "impertinent" allegations and (2) the "scandalous" descriptions of certain events. Certainly, the complaint is unnecessarily long. Moreover, defendants' criticism rings true that it reads like a dramatic short story rather than a "short and plain statement" of plaintiff's claims required by Fed. R. Civ. P. 8(a).[4] Still, the court finds the allegations on a whole are arguably relevant to plaintiff's municipal liability claims and that the allegations -- most of which are from public documents -- are not so "scandalous" as to require striking, with one exception: the court will require plaintiff to file an amended complaint omitting the table of contents and the subheadings under Section IV.

Rather than attempt to tackle the entire complaint, the court focuses on those paragraphs identified in bullet points on pages 6-7 of defendants' opening brief. *First*, defendants complain about excessive and irrelevant details concerning two prior incidents involving Heimsness. (Defs.' Br. (dkt. #6) 6-7.) In brief, the complaint alleges that in 2001, Heimsness fired a gun at a moving, occupied vehicle in a parking lot. (Compl.

---

[4] *See, e.g.*, Compl. (dkt. #1) ¶ 4104 ("During the early morning hours of November 9, 2012, on the 500 block of South Baldwin Street, Madison, Wisconsin, it was approximately 35 degrees Fahrenheit with clear skies and calm winds. The street, sidewalks, driveways and surrounding grass areas were dry. A small, crescent-shaped moon was located low in the southeastern area of the sky.").

(dkt. #1) ¶¶ 4008-25.) In investigating the incident, the Madison Police Department found, in part, that Heimsness had "employed poor judgment and tactical decision-making as you moved relative to the actions of the vehicle" (*id.* at ¶ 4028), and he was suspended for 15 days (*id.* at ¶ 4030). The complaint also alleges that in 2006, Heimsness "relentlessly and mercilessly beat[] a 150-pound 23-year-old at a State Street Tavern, in a Rodney King-esque scene." (*Id.* at p.18.) The Madison Police Department found that his "actions were reasonable and necessary" and Heimsness was not disciplined for this incident. (*Id.* at ¶ 4075.) While the court agrees with defendants that plaintiff's allegations are unnecessarily detailed for notice pleading, these two incidents are arguably material to the City's prior knowledge of Heimsness's alleged violent tendencies.

Understandably, defendants take particular issue with plaintiff's excessive adjectives and adverbs, particularly use of the phrase "Rodney King-esque" to describe the State Street Brat incident. As plaintiff explains in its opposition -- and as alleged in the complaint -- this term was used by a bartender who called 911 to report that a police officer was beating a patron of the bar. (Compl. (dkt. #1) ¶ 4064.) To the extent that this is plead as an accurate transcription of the 911 call, defendants may simply admit in answering the complaint that the paragraph contains an accurate transcription of the caller's report, but otherwise deny the allegation. Similarly, plaintiff's allegation that Heimsness had an "alarming" number of civilian complaints is also arguably relevant to the City's knowledge of Heimsness's violent tendencies, which defendants are free to deny or admit as appropriate.

4

*Second*, defendants take issue with certain allegations concerning Heimsness more generally, including allegations of Heimsness's use of "insulting, defamatory or obscene language" and comments about his likes (fast cards, fast women, drinking beer and watching porn). (Defs.' Opening Br. (dkt. #6) 6-7 (citing Compl. (dkt. #1).) While these allegations may or may not be relevant to his character and fitness to perform the job of a police officer, more specific allegations about communications via his mobile data computer in which he stated that he was going to "blast" a person or "go on a shooting spree" and his alleged misuse of firearms are arguably more relevant to Heimsness's violent tendencies and, in turn, the City's awareness. (*Id.*)

Regardless, given the broad array of allegations targeted by defendants, the court declines to review each allegation and determine whether it crosses the line. As a whole, these allegations appear material and are not so scandalous as to require striking. Of course, in denying defendants' motion to strike these allegations, the court in no way holds that evidence concerning these allegations necessarily will be relevant to plaintiff's claims or that even if relevant, will be admissible, on Rule 403 or other grounds. The court simply finds that the allegations are not so impertinent or scandalous as to require striking them.

*Third*, defendants also complain about the narrative description of the events of November 8-9, 2012, including eyewitness accounts, the reaction of neighbors, and Heenan's physical condition after the shooting. (*Id.*) These allegations, too, are at least arguably relevant to whether Heimsness used excessive force in shooting Heenan and, therefore, the court declines to strike them.

*Fourth*, defendants complain about plaintiff's table of contents and the subheadings for Section IV of the complaint. On this point, the court agrees. The table of contents and subheadings are both unnecessary and inflammatory. Accordingly, the court will strike these and require plaintiff to file an amended complaint removing both.

**II. Motion to Dismiss**

Defendants seek dismissal of plaintiff's claim that Wray was deliberately indifferent to Heenan's constitutional rights because plaintiff has not alleged -- nor can it -- that Wray was "'personally involved' in and actually 'caused' the deprivation of the constitutional right." (Defs.' Br. (dkt. #6) (citing *Surita v. Hyde*, 665 F.3d 860, 875 (7th Cir. 2011); *Johnson v. Snyder*, 444 F.3d 579, 583-84 (7th Cir. 2006)).) Specifically, defendants argue that a number of the allegations concerning Heimsness's violent tendencies pre-date Wray's tenure, and that those that occurred while Wray was Chief, did not place him on notice that Heimsness would violate a citizen's constitutional rights.

In response, plaintiff argues that defendants mistakenly rely on Eighth Amendment deliberate indifference cases, requiring a subjective notice standard, whereas plaintiff here asserts a Fourth Amendment failure to train or supervise claim where the "deliberate indifference standard is objective," requiring only "obvious or constructive notice." (Pl.'s Opp'n (dkt. #10) 19.) In support of its view of the law, plaintiff cites *Farmer v. Brennan*, 511 U.S. 825, 841 (1994), but misreads that case. In *Farmer*, the Supreme Court described the test for *municipal* liability for deliberate indifference as

6

described in *Canton v. Harris*, 489 U.S. 378 (1989), but rejected applying an "obviousness" test with respect to the individual liability of prison officials. 511 U.S. at 841 (explaining that the term "deliberate indifference" in *Canton* was used for the "quite different purpose of identifying the threshold for holding a city responsible for the constitutional torts committed by its inadequately trained agents"). The distinction being drawn in *Farmer* is *not* between a failure to train claim under the Fourth Amendment as compared to the Eighth Amendment -- as plaintiff argues -- but rather between a claim against a municipality and a claim against an official of the municipality in his or her individual capacity.

Plaintiff's failure to recognize this distinction is troubling given that *all* of the other cases cited in support of applying an "obviousness" or "constructive knowledge" test involve claims against a municipality or a government official in his official capacity. (*See* Pl.'s Opp'n (dkt. #10) 21 (citing *Graham v. Sauk Prairie Police Comm'n*, 915 F.2d 1085, 1102 (7th Cir. 1990) (discussing whether a jury could conclude that the need for further investigation was so obvious to result in a finding that municipal defendants were deliberately indifferent) (citing *Canton*); *Jenkins v. Bartlett*, 487 F.3d 482, 493 (7th Cir. 2007) (discussing liability of police department and its chief in his official capacity); *Gonzalez v. City of Chi.*, 888 F.3d 887, 890 (N.D. Ill. 1995) (considering deliberate indifference claim against the City)).)[5] While the court understands a different standard

---

[5] While the court certainly appreciated counsel's role as an advocate for the client's position, it trusts the obligation for forthrightness and candor to the court will also be followed, including acknowledging adverse and unhelpful facts and law. Not only is this counsel's ethical obligation, a failure to meet this expectation will only hurt a client's case in the long run.

applies in a Fourth Amendment claim (objective reasonableness) as compared to an Eighth Amendment claim (deliberate indifference), both apply a subjective standard, at least requiring knowledge for a supervisory official to be liable.[6] *See, e.g.*, *Backes v. Vill. of Peoria Heights, Ill.*, 662 F.3d 866, 870 (7th Cir. 2011) (describing supervisory liability test as requiring knowledge or reckless indifference in case involving an underlying Fourth Amendment excessive force claim).

Recently, in a less discussed portion of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court considered a supervisory liability claim premised on intentional discrimination under the First and Fifth Amendments. *Id*. at 675-77. After reiterating the Court's long-standing rejection of supervisory liability premised on a theory of *respondeat superior*, the Court held that the plaintiff in that case failed to state a claim against government officials, rejecting the plaintiff's argument for "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution." *Id.* at 677. Instead, the Court held that "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id*. As such, "*purpose* rather than knowledge" is required to impose so-called "supervisory liability." *Id.* (emphasis added).

Courts initially grappled with the import of the Supreme Court's holding in *Iqbal* with respect to supervisory liability claims, including the Seventh Circuit. *See Arnett v. Webster*, 658 F.3d 742, 757 (7th Cir. 2011) ("The landscape of such claims after *Iqbal* remains murky."); 1 Sheldon H. Nahmod, *Civil Rights and Civil Liberties Litigation* §3:102

---

[6] The court uses the qualifier "at least" for reasons described below.

at 3-468 (4th ed. 2013) ("Note, however, that the Supreme Court, in *Ashcroft v. Iqbal*, an important 2009 decision . . ., appears to have ruled that even deliberate indifference with actual knowledge may not be sufficient for supervisory liability. All of the cases in this section that are inconsistent with *Iqbal* in this respect are no longer good law.").

In an *en banc* opinion, however, the Seventh Circuit went to great lengths to clarify any uncertainty: "*Iqbal* held that knowledge of a subordinates' misconduct is not enough for liability. The supervisor must want the forbidden outcome to occur." *Vance v. Rumsfeld*, 701 F.3d 193, 204 (7th Cir. 2011) (*en banc*).[7] Judge Easterbrook, writing for the majority, went on to explain that "[d]eliberate indifference to a known risk is a form of intent," but "to show *scienter* by the deliberate-indifference route, a plaintiff must demonstrate that the public official knew of risks with sufficient specificity to allow an inference that inaction is designed to produce or allow harm." *Id.* (citing *Farmer*, 511 U.S. 825). As a result, the majority held that for the substantive due process claim at stake in *Vance* to proceed, the plaintiffs "would need to allege that Rumsfeld knew of a substantial risk to security contractors' employees, and ignored that risk because he wanted plaintiffs (or similarly situated persons) to be harmed." *Id.* The court, therefore, reversed the district court's denial of defendant's motion to dismiss because the complaint did not allege that Rumsfeld wanted plaintiffs to be harmed "and could not plausibly do so." *Id.*

---

[7] *Vance* and *Iqbal* were both *Bivens* actions, but that distinction appears inconsequential since *Vance* describes § 1983 as the state counterpart of a *Bivens* action. *See Vance v. Rumsfeld*, 701 F.3d 193, 210 (7th Cir. 2012).

9

Here, plaintiff only alleges that Chief Nobel Wray had knowledge of Heimsness's prior violent acts in 2001 and 2006, but the complaint understandably stops short of alleging that Wray had actual knowledge of the risk Heimsness would shoot and kill an innocent citizen necessary for finding Wray *wanted* Heenan or someone similarly situated to be harmed.  *See Vance*, 701 F.3d at 204 ("Every police chief knows that some officers shoot unnecessarily," but that is not enough to hold them individually "liable on the theory that they did not do enough to combat subordinates' misconduct.").  While Heimsness allegedly sent disturbing communications in the months preceding Heenan's shooting via the mobile command center that threatened -- or at least expressed a desire -- to shoot people or be otherwise violent, plaintiff does not allege that these messages reached Wray, nor is it reasonable to infer from the complaint that they did.

At most, the complaint alleges that Wray was generally aware of Heimsness's violent tendencies, and that is not enough to maintain a claim against him in his individual capacity.  Rather, the proper outlet for such a claim is the one already directed against the City.  *See Sanville v. McCaughtry*, 266 F.3d 724, 739 (7th Cir. 2011) ("Failure to train claims are usually maintained against municipalities, not against individuals.").  Accordingly, the court will grant defendants' motion and will dismiss Noble Wray as a defendant in this action.

ORDER

IT IS ORDERED that:

1. Defendants' City of Madison and Noble Wray's motion to strike or dismiss all or portions of the complaint (dkt. #5) is GRANTED IN PART AND DENIED IN PART.  Defendants' motion to strike is granted as to the table of contents

and the subheadings under Section IV, and otherwise denied. Defendants' motion to dismiss claims against Noble Wray is granted, and Wray is dismissed from this action.

2. Defendant Stephen Heimsness's motion to strike the complaint and joinder and adoption of co-defendants' motion to strike (dkt. #11) is GRANTED IN PART AND DENIED IN PART as described above.

3. The parties' stipulation to amend the scheduling order is GRANTED. The court adjusts the deadlines in the preliminary pretrial conference order (dkt. #14) and resets the trial date as follows:

   a) November 7, 2014: proponent's liability expert disclosure deadline

   b) December 19, 2014: respondent's liability expert disclosure deadline

   c) January 9, 2015: dispositive motion's deadline

   d) February 13, 2015: plaintiff's damages expert disclosure deadline

   e) March 13, 2015: defendant's damages expert disclosure deadline

   f) May 8, 2015: discovery cutoff

   g) May 8, 2015: settlement letters due

   h) May 18, 2015: Rule 26(a)(3) disclosures and motions in limine

   i) June 1, 2015: responses to Rule 26(a)(3) disclosures and motions in limine

   j) June 17, 2015, at 4:00 p.m.: final pretrial conference

   k) June 22, 2015 at 9:00 a.m.: trial

Entered this 29th day of July, 2014.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge